IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| WILLIE DAVIS and CHAD DAVIS | § | |
| v. | § | CIVIL ACTION NO. 6:14cv996 |
| TODD FOXWORTH, ET AL. | § | |

### MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND ENTERING FINAL JUDGMENT

The Plaintiffs Willie Davis and Chad Davis, father and son, prisoners of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of their constitutional rights. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named Defendants are Wardens Todd Foxworth and Kevin Motal, Major David Bowman, Captain Keith January, Captain Jock, and Lt. Kelly, officials at the Michael Unit of TDCJ-CID.

**I. Background**

In their complaint, the Plaintiffs contend that they were assigned to the Michael Unit when an unknown person sent an I-60 inmate request form to Warden Foxworth stating that they, the Plaintiffs, intended to escape. The I-60 stated that Willie Davis, the father, had in his possession a map of Texas and a copy of his driver's license.

A disciplinary case, falsely accusing Davis of planning to escape, was brought against Willie Davis on August 4, 2011. The Plaintiffs explain that the map had been taken from the Tyler newspaper to which Davis subscribed and the copy of his driver's license had been included in the criminal appeals record sent to him by his attorney.

1

Davis was convicted in the disciplinary case. Captain January had Davis placed in solitary confinement and then administrative segregation after the conviction. The Plaintiffs allege that Captain Jock, the hearing officer, ordered that Willie and Chad Davis be sent to separate prison units. They claim that Warden Motal has been instrumental in denying all requests by the Plaintiffs to visit each other, despite TDCJ rules and regulations giving immediate family members semi-annual visitation privileges. Prior to this time, Bowman, January, and Kelly had stated on more than one occasion that they were do everything in their power to ensure that Willie and Chad Davis were separated and never saw one another again.

Willie Davis hired an attorney named Yolanda Torres to have the disciplinary case overturned and she was successful in doing so. The Plaintiffs attach as Exhibit F to their complaint a copy of a letter from Sharon Felfe Howell, TDCJ General Counsel, to Torres stating that the disciplinary case had been reversed and removed, the escape precaution was removed from Davis' file, and all good time was restored. The letter is dated January 9, 2013.

As a result, the escape designator was removed from both Willie and Chad Davis' classification records. However, the Defendants sitting on unit classification committees continued to deny them visitation privileges, even though neither Willie nor Chad Davis had ever been charged with or found guilty of major disciplinary infractions in the past. Willie and Chad Davis also remained incarcerated at different prison units.

## II. The Motions to Dismiss and the Responses

The Defendants Foxworth, Jock, Motal, and Kelly filed a motion to dismiss, and Captain January filed a separate motion to dismiss. These motions argue that the statute of limitations has expired on Plaintiffs' claims, the Plaintiffs failed to set out viable retaliation or conspiracy claims, and the Defendants are entitled to qualified immunity.

The Plaintiffs' response to the motion filed by Foxworth, Jock, Motal, and Kelly argues that the lawsuit was filed within two years after the disciplinary case was overturned and thus is within the statute of limitations. They contend that: the Defendants should be held liable under the Texas

Tort Claims Act; they have a liberty interest in good time credits and are entitled to due process before these credits are revoked but Willie Davis was denied due process in his disciplinary hearing; the Defendants conspired and retaliated against them; Motal and Foxworth failed to take corrective action when the matter was brought to their attention; Captain Jock placed an escape designator and a "not for same unit" designation on the Plaintiffs by relying on an unreliable inmate informant; and Captain Jock sought to separate the Plaintiffs, worked with the disciplinary board to ensure a finding of guilt because the Plaintiffs were wealthy, and failed to complete confiscation papers.

The Plaintiffs' response to Captain January's motion to dismiss adds more factual details and incidents to their claim, including one in which Captain Jock was disciplined by a warden for denying a visit with Chad Davis' uncle Jim Davis. This incident occurred prior to the I-60 accusing the Plaintiffs of attempting to escape.

In 2012, Willie Davis was denied craft shop privileges because he had the major disciplinary case on his record. The case was overturned in January of 2013, but Davis was again denied craft shop privileges in October of 2013 because he was told he was "still on the list." The Plaintiffs also complain that they were subjected to cell searches more frequently than other prisoners.

### III. The Magistrate Judge's Report

The Magistrate Judge first addressed the issue of the statute of limitations and concluded that the Plaintiffs' retaliation claim was barred by limitations because when retaliation is alleged, the prisoner need not show that a disciplinary conviction has been overturned. Thus, the limitations period began to run when the alleged retaliatory acts occurred, not when the disciplinary case was overturned. *Hanna v. Maxwell*, 548 F.App'x 192, 2013 U.S. App. LEXIS 24373 (5th Cir., December 6, 2013), *cert. denied*, 135 S.Ct. 101 (2014), *citing Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995).

Even were the retaliation claim not barred by limitations, the Magistrate Judge determined that Plaintiffs failed to show the invocation of a specific constitutional right forming the basis of the alleged retaliation or that the alleged retaliation was intended to or did chill or discourage them from

3

exercising any specific constitutional rights. Furthermore, the Magistrate Judge stated that Plaintiffs failed to show that but for the alleged retaliatory motive, the actions complained of would not have occurred; the invocation of temporal proximity alone was insufficient to show retaliation.

Although Willie Davis complained he was denied due process in his disciplinary case, the Magistrate Judge found that Davis did not show that he was deprived of any constitutionally protected liberty interests as a result of this case. The punishments of 15 days of cell and commissary restrictions and reduction in classification status did not infringe upon any such liberty interests, and while Davis lost 150 days of good time credits, these were later restored. Even had they not been restored, Davis is not eligible for release on mandatory supervision, meaning the loss of good time credits did not implicate any liberty interests and thus did not trigger the procedural protections of the Due Process Clause. *See, e.g.*, *Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000); *Teague v. Quarterman*, 482 F.3d 769, 776 (5th Cir. 2007).

Similarly, the Magistrate Judge stated that the placement of Willie and Chad Davis on separate prison units and the denial of visitation privileges likewise did not implicate any constitutionally protected liberty interests. Even if there was a liberty interest implicated in the disciplinary case, the Magistrate Judge determined that Plaintiffs failed to show a denial of due process at the hearing.

Although the Plaintiffs complained of a conspiracy, the Magistrate Judge concluded that this claim lacked merit because there was no showing of the deprivation of a constitutionally protected right. The Magistrate Judge further rejected the claim against Foxworth and Motal for failing to take corrective action because prisoners do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005).

The Magistrate Judge stated that the fact Captain Jock did not use the proper confiscation forms and listed them as escape risks, designating them for housing on different units, did not violate any constitutionally protected liberty interests. Willie Davis' placement in administrative

4

segregation and his invocation of the Texas Tort Claims Act likewise did not state a claim upon which relief could be granted.

The Plaintiffs raised new claims in their response to Captain January's motion to dismiss, but the Magistrate Judge determined that these new claims also failed to state a claim upon which relief may be granted. The Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell and the denial of craft shop privileges does not amount to a constitutional violation. The fact Davis' cell was left in disarray after a search also did not set out a constitutional violation.

Although the Plaintiffs sought various items of discovery in declarations attached to the response to Captain January's motion to dismiss, the Magistrate Judge stated that the district court need not allow any discovery unless it finds that a plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of the defendant's conduct at the time of the alleged acts. *Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995); *Wicks v. Mississippi State Employment Services*, 41 F.3d 991, 994 (5th Cir. 1995). The Magistrate Judge determined that none of the discovery sought would nudge the claims across the line from conceivable to plausible and that even assuming the truth of the well-pleaded allegations, the Plaintiffs failed to chart a factual path to the defeat of the Defendants' immunity, free from conclusions. In this regard, the Magistrate Judge further concluded that the Defendants were entitled to qualified immunity and recommended that the motions to dismiss be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (in order to state a claim upon which relief may be granted, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief which is plausible on its face).

## IV. The Plaintiffs' Objections

### A. Limitations

The first 22 pages of the Plaintiffs' objections consists of a detailed recapitulation of the facts of the case. Turning to the statute of limitations, the Plaintiffs contend that the Magistrate Judge

"failed to take into account all matters under a liberal interpretation." They state that the Court's inquiry should not stop with the complaint but should include "all properly filed responses to defendants' motion, in which Plaintiffs more fully expounded their claims regarding retaliation, conspiracy, and other matters." They again maintain that their claim accrued when the disciplinary case was overturned and that although Chad Davis was never charged formally, his claims also accrued when Willie Davis' disciplinary case was overturned.

After arguing that the disciplinary case was mailed back to Willie Davis on February 17, 2012, not December 9, 2011, the Plaintiffs contend that other matters serve to extend the limitations period. Specifically, they argue that the language of 42 U.S.C. §1997e, requiring exhaustion of administrative remedies, also applies to administrative appeals after all grievances have been exhausted, even including letters written by lawyers to challenge the grievance denials.

Plaintiffs argue that the two steps of the grievance procedure are merely the "basic steps" to exhausting a grievance and that in their case, the Step One and Step Two grievance procedures were ineffective because "no party would adjudicate the matter with fairness to the plaintiffs, *pro se*." Hiring counsel to intervene and appeal the Step Two decision was the only manner in which justice could be done, so Plaintiffs argue that this action was part of the exhaustion requirement. As a result, the Plaintiffs maintain that the limitations period began when the appeal was finalized, on January 12, 2013.

The Plaintiffs note the Magistrate Judge's determination that they did not have to wait until the disciplinary case was overturned to bring their retaliation claim, but do not discuss, much less controvert, this conclusion. Instead, they argue that the hiring of counsel to challenge the disciplinary case was part of the exhaustion process. Aside from the fact that requiring the hiring of counsel would make exhaustion of administrative remedies virtually impossible for most prisoners, the Fifth Circuit has clearly held that completion of the two-step grievance process provided by TDCJ suffices to exhaust administrative remedies. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). No further steps are required.

The Plaintiffs go on to assert that under *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), their claims did not accrue until the disciplinary case was overturned. The Magistrate Judge determined that all of the claims except for the retaliation claim were not barred by limitations because "a prisoner must show favorable termination prior to bringing suit simply on the filing of a false disciplinary charge, absent an allegation of retaliatory interference with the exercise of a constitutional right." *Woods*, 60 F.3d at 1164-65. Thus, the Magistrate Judge essentially agreed with the Plaintiffs' position with regard to the non-retaliation claims, concluding that these were not barred by limitations because of the requirement of favorable termination of the disciplinary case.

However, as the Fifth Circuit explained in *Hanna v. Maxwell*, the retaliation claim does not carry a favorable termination requirement, but may be brought when the alleged retaliatory act occurred. Thus, the limitations period begins to run when the lawsuit could have been brought, rendering the retaliation claims barred by the statute of limitations. Plaintiffs' objection in this regard is without merit.

The Plaintiffs next argue that the timeliness of their lawsuit depends on the "continuing violation doctrine." This issue is raised for the first time in the Plaintiffs' objections and therefore is not properly before the Court. *Finley v. Johnson*, 243 F.3d 215, 218 n.3 (5th Cir. 2001) (issues raised for the first time in objections to the Report of the Magistrate Judge are not properly before the District Court). In the interest of justice, however, the Court will address the merits of this argument.

The continuing violations doctrine is equitable in nature and relieves a plaintiff of establishing that all of the challenged conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls into the limitations period. The doctrine will extend the limitations period on otherwise time-barred claims only when the unlawful practice manifests itself over time rather than in a series of discrete acts. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004).

The Supreme Court has recently clarified the limits of the continuing violations doctrine in the context of employment discrimination litigation, holding that discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Thus, each discriminatory act starts a new clock for filing charges alleging that act. An exception exists for hostile environment claims, which will not be time barred so long as all acts which constitute the claim are part of the same unlawful practice and at least one act falls within the time period. Thus, claims based on discrete acts are timely only when such acts occurred within the limitations period, and claims based on hostile environment are only timely where at least one act occurred during the limitations period. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).[1]

In this case, Plaintiffs' allegations of retaliation consist of discrete acts which fell outside of the limitations period and are therefore time barred. This Court has found no federal case in any jurisdiction wherein a prisoner's claims of multiple acts of retaliation were held equivalent to a "hostile environment" triggering the continuing violations doctrine and bringing all such retaliatory acts within the statute of limitations. *See, e.g.*, *Pouncil v. Tilton*, 704 F.3d 568, 581 (9th Cir. 2012) (repeated denials of a prisoner's request for conjugal visits are discrete acts). Furthermore, the U.S. Supreme Court has not applied the continuing violations doctrine in §1983 litigation. *Foddrill v. McManus*, civil action no. SA-13-cv-51, 2013 U.S. Dist. LEXIS 125837, 2013 WL 6198228 (W.D.Tex., November 26, 2013). The Plaintiffs' objections regarding the "continuing violations doctrine" are without merit.

---

[1]Hostile environment claims are different from discrete acts because the very nature of the claim involves repeated conduct. The unlawful employment practice therefore cannot be said to occur on any particular day, but occurs over a series of days or even years and, unlike with discrete acts, a single act of harassment may not be actionable on its own. Hostile environment claims are thus based on the cumulative effects of individual acts. *Morgan*, 536 U.S. at 115.

8

B. Retaliation

Next, the Plaintiffs state that in 2007, they caused Captain Jock embarrassment when he was reprimanded by the Warden, and Jock, January, Kelly, and Bowman vowed to have Plaintiffs separated so they would never see each other again. Some time later, Jock charged Chad Davis' brother Trey Davis, also a prisoner, with a false disciplinary case. Jock told Chad Davis that the family was not to be housed together. A few months after this, Jock prevented Plaintiffs from eating together, stating that he would find a way to separate them permanently. Six months later, Trey and Willie Davis were ordered to be relocated, but Plaintiffs state that "only due to Willie Davis' status as a G-3 was he spared."[2]

In 2011, Willie Davis wrote a letter complaining about a commissary worker named Cannon, who obtained the letter and promised to "make the Davis family miserable." Plaintiffs allege Cannon was "a close friend to Captain Jock." Jock, January, Kelly, and Bowman then began enforcing cell searches against the Plaintiffs. Their telephone calls began to be disrupted and disconnected, costing them extra money.

Plaintiff state that Willie Davis' cellmate became angry and a letter was written, apparently pretending to be from Davis, indicating that Davis was planning to escape. On August 2, 2011, Davis and his cellmate were called out and a search of the cell was undertaken at Jock's order. The handwriting on the letter was never compared to that of Willie Davis. Jock told Willie that "he had

---

[2]The chronology of events is not clear from the Plaintiffs' pleadings. On page 3 of their objections (docket no. 37), the Plaintiffs state that some time after July 2007, Captain Jock denied a visit with Chad Davis' uncle Jim Davis. The uncle complained to Warden Lloyd Massey, who allowed the visit to take place. Plaintiffs state "this denial [by Jock] stemmed from a letter Plaintiff Willie Davis had mailed on or around June 11 complaining of the commissary." The commissary worker, Cannon, confronted Willie Davis about the letter, and the date given for this confrontation is June 22, 2010. On page 6 of the objections, the date of "summer 2010" is given for the commissary incident, but the disciplinary case is dated August 2, 2011. On page 31 of the objections, the Plaintiffs state that the reprimand of Captain Jock happened in 2007 and that the commissary letter was written in 2011.

9

it with you, Davis." After three more cell searches, the map and photo copy of the driver's license were found.

Jock and Kelly told Chad that "the Davis family has come to an end." Jock placed restrictions in their records to keep them from being housed together, even though Chad and Trey had not been charged with any wrongdoing. Willie Davis received the disciplinary case for attempted escape and was found guilty by Captain January. Plaintiffs claim that no investigation was ever done and that Warden Motal, whom Plaintiffs call a "close friend of Captain Jock," turned a deaf ear to the matter.

All of these incidents took place more than two years prior to the filing of the lawsuit. To the extent that Plaintiffs raise retaliation claims based upon these incidents, such claims are barred by the statute of limitations.

Although the disciplinary case was overturned in January of 2013, Plaintiffs assert that the harassment continued. They describe an incident, raised for the first time in their objections, in which Chad Davis had a gold and diamond ring and a gold dental partial stolen by officers. He saw an officer named Hernandez wearing the ring and reported it, and Hernandez resigned, but she was allowed to keep the ring. Hernandez is not named as a defendant in the lawsuit and the Plaintiffs indicate that this incident occurred at the Coffield Unit, after Chad Davis was transferred away from the Michael Unit. The Plaintiffs show no connection between the alleged thefts and any of the Defendants or any of the incidents described in the lawsuit.

Plaintiffs assert that they became the victim of retaliation when Jim Davis complained about Captain Jock denying a visit, causing Jock to receive discipline from the warden. They claim retaliation again ensued when Willie Davis wrote a letter complaining about a commissary worker named Cannon. These contentions arguably assert the invocation of a constitutional right for which the claimed retaliation ensued. However, the Plaintiffs offer nothing beyond conjecture to show that but for these complaints, the alleged retaliatory adverse acts would not have occurred. *See Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997); *Woods*, 60 F.3d at 1166 (observing that district courts must "carefully scrutinize" claims of retaliation in order to ensure that prisoners do not

"inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around themselves," and that claims of retaliation must be "regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.")

Plaintiffs assert that Jock and other officers constantly threatened to separate them, beginning in June of 2007 when Willie, Chad, and Trey Davis were all brought together on the Michael Unit and assigned to the same pod. At that time, Plaintiffs say, Captain Jock "did not approve of this assignment from the start." Thus, Plaintiffs' pleadings indicate that Jock wanted to separate them before any of the events for which they were allegedly retaliated against took place. The Magistrate Judge correctly determined that Plaintiffs' retaliation claims are barred by limitations and fail to state a claim upon which relief may be granted. Plaintiffs' objections in this regard are without merit.

C. Due Process

Plaintiffs complain first that the Report only addresses Willie Davis and "totally fails to acknowledge that Trey and Chad, except for good time and segregation, were subjected to the same treatment as Willie, labeled as a security risk, without any disciplinary action or claims of wrongdoing." Trey Davis is not a party to the lawsuit.

As the Plaintiffs acknowledge, Chad Davis did not receive disciplinary action. The fact that he was "labeled as a security risk" does not trigger any due process protections because prisoners have no protectable property or liberty interest in their custodial classification. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). Likewise, Chad Davis' transfer to the Coffield Unit does not trigger any due process protections because prisoners have no constitutionally protected liberty interest in being confined at any particular penal institution within the state. *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).[3]

---

[3]Plaintiffs do not allege, nor does the record reflect, that the Coffield Unit is significantly more restrictive than the Michael Unit. Both units have housing for all general population levels as well as administrative segregation and outside trusty housing. *See* http://www.tdcj.state.tx.us/unit_directory/index.html.

The Plaintiffs cite *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) as stating that where the state provides for good time credit or other privileges and further provides for forfeiture of these privileges only for serious misconduct, the interest of the prisoner in this degree of liberty entitles him to those minimum procedures appropriate under the circumstances. However, the context of the discussion in *Wolff* centered around the Nebraska good time laws, which created a right to a shortened prison sentence. Because these good time laws thereby created a liberty interest, the prisoners were entitled to certain due process protections before the good time could be forfeited.

By contrast, Plaintiffs in the present case have not pointed to any deprivations imposed upon them which implicated any constitutionally protected liberty interests. None of the deprivations about which they complain exceeded their sentences in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nor did any of these deprivations impose atypical or significant hardships upon the Plaintiffs in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *see also Harper*, 174 F.3d at 719 and n.4, *citing Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (no liberty interest in administrative segregation absent an atypical and significant deprivation) *and Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir. 1988) (no protectable interest in custodial classification).

As the Magistrate Judge observed, the Plaintiffs are not eligible for release on mandatory supervision. They thus lack a constitutionally protected interest in their good time. *Malchi*, 211 F.3d at 959. The Plaintiffs have failed to show a denial of any process which they were due. Their objection on this ground is without merit.

### D. Conspiracy

Plaintiffs state that a conspiracy may be charged under §1983 as a legal mechanism through which to impose liability on all of the defendants without regard to who committed a particular act, but acknowledge that a conspiracy claim is not actionable without an actual violation of §1983. They contend that Jock, January, Kelly, and Bowman, who were state employees, had an agreement to

separate the Davis family, even though the Davis family had been placed where they were by the Classification Board. The Plaintiffs argue as follows:

> That the acts and omissions of Captain Jock, Captain January, Lt. Kelly, and/or Major David Bowman, with others were the implementing force, acting under color of law, to subject or cause to be subjected to a policy, regulation, or ordinance, or decision officially adopted by a custom and usage promulgated by these officials against the Davises. They worked in concert with each other, brought others into the conspiracy, and further the acts, even after the case was overturned to insure the Davises were separated, among other causes of injury and harm, according to their plot against them.

A conspiracy claim requires the plaintiff allege facts suggesting an agreement to commit an illegal act and an actual deprivation of a constitutional right. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). They point specifically to their having been separated, but as the Magistrate Judge correctly concluded, the fact that the Plaintiffs have a familial relationship of father and son does not give them any constitutionally protected liberty interest in being housed at the same unit. *See Davis v. Carlson*, 837 F.2d 1318, 1319 (5th Cir. 1988); *Mayo v. Lane*, 867 F.2d 374, 375 (5th Cir. 1989). Nor does this relationship give them any constitutional right to visitation. *Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999).

Specific facts must be pled when a conspiracy is alleged; mere conclusory allegations will not suffice. *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986). In pleading these specific facts, the plaintiffs must allege the operative facts of the alleged conspiracy. *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987). Plaintiffs have failed to set out specific facts showing the operative facts of the alleged conspiracy, nor facts suggesting that the claimed conspirators agreed to commit an illegal act or that the Plaintiffs suffered an actual deprivation of constitutional rights. Their objection on this point is without merit.

E. Failure to Take Corrective Action

The Plaintiffs complained that Warden Foxworth and Warden Motal were notified when the false disciplinary case was filed against Willie Davis and that the wardens knew or should have known that the only evidence against Davis was the anonymous I-60, the author of this I-60 was unreliable, the mailroom distributed newspapers and some of these contained maps, many inmates

13

had copies of their driver's licenses in their legal paperwork, the disciplinary hearing officer denied his witnesses, and that January, Kelly, and Bowman "had it in" for the Davises. However, Plaintiffs assert, Foxworth and Motal failed to take corrective action but instead allowed improper acts and omissions to proceed, even acting in concert with the officers.

The Magistrate Judge determined that this claim lacked merit because prisoners do not have a constitutionally protected liberty interest in having grievances or complaints resolved to their satisfaction, meaning there is no denial of due process when prison officials fail to do so. *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005). Thus, the Magistrate Judge stated that the fact Foxworth and Motal did not take such corrective action as Plaintiffs believed appropriate did not violate any protected liberty interests. The Magistrate Judge further stated that the failure to take the corrective action Plaintiffs believed appropriate did not amount to an "authorized custom or usage."

In their objections, Plaintiffs contend that the facts show the parties acted as friends and co-conspirators to support one another. They cite *United States v. Ascarrunz*, 838 F.2d 759, 762-63 (5th Cir. 1988), a federal criminal prosecution, as holding that statements made by an unarrested co-conspirator who is still operating in furtherance of the ongoing conspiracy may be introduced against the arrested conspirator, but they fail to show how this holding has any relevance in the present case. They assert that other officers like Ms. Lindale and Sgt. Karriker, who acted for and at the behest of Jock, January, Kelly, and Bowman, told the Plaintiffs that the officers "held power and were close-knit friends to achieve their goals," which goal was "a continued effort to separate and harass the Davises and cause them hardship." These allegations likewise fail to show that a constitutional violation occurred.

The Plaintiffs' objections do not mention the Magistrate Judge's conclusion that the claim of failure to take corrective action lacks merit because prisoners have no constitutionally protected liberty interest in having grievances or complaints resolved to their satisfaction. The fact that Warden Foxworth and Warden Motal did not act on Plaintiffs' complaints in the manner that the

14

Plaintiffs wished does not set out a constitutional violation. Plaintiffs' objection on this point is without merit.

### G. The Texas Tort Claims Act and Immunity

The Plaintiffs cite a portion of the Texas Tort Claims Act from 1974, Tex.Rev. Civ. Stat. Ann. art. 6252-19 (repealed effective September 1, 1985), as stating that each unit of government in the state shall be liable for money damages for personal injury or death when proximately caused by the negligence or wrongful act or omission of any officer or employee acting within the scope of his employment arising from the operation or use of a motor-driven vehicle and motor driven equipment, other than motor-driven equipment used in the operation of floodgates or water release equipment by river authorities created under Texas law.

The current version of the law, found in Tex. Civ. Prac. & Rem. Code sec. 101.021, provides that a governmental unit in the state is liable for property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of his employment if the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment and the employee would be personally liable to the claimant according to Texas law, and the personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, if it were a private person, be liable to the claimant according to Texas law.

The Plaintiffs do not identify any personal injury or property injury which they suffered as a result of the wrongful act or omission of a state employee operating a motor-driven vehicle or motor-driven equipment. They fail to show how the Texas Tort Claims Act applies to their case.

The Plaintiffs further assert that 42 U.S.C. §1983 imposes liability for claims arising under the U.S. Constitutional and not for violations of duties of care arising out of tort law, where the officers acted outside of their discretionary duties and not in good faith with a goal of targeting Plaintiffs to ensure they were separated. Thus, they assert that "the officers held no qualified immunity because of their actions and omissions and under the Texas Tort Act."

The Texas Tort Claims Act does not affect qualified immunity under federal law and is inapplicable to this case. The doctrine of qualified immunity protects government officials from liability for monetary damages in their individual capacities insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Thompson v. Mercer*, 762 F.3d 433, 436-37 (5th Cir. 2014). Claims of qualified immunity require a two-step analysis, which may be done in either order: first, the court determines whether a constitutional right would have been violated on the facts alleged, and second, whether the right was clearly established at the time of the alleged violation. *Kitchen v. Dallas County*, 759 F.3d 468, 476 (5th Cir. 2014). Even if the official's conduct violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Jones v. Collins*, 132 F.3d 1048, 1052 (5th Cir. 1998).

After the defendants properly invoke qualified immunity, the plaintiff bears the burden to rebut its applicability. *Kovacic v. Villareal*, 628 F.3d 209, 211 (5th Cir. 2010). Such a rebuttal requires a showing that all reasonable officials, similarly situated, would have known the defendants' acts violated the Constitution. *Tamez v. Manthey*, 589 F.3d 764, 770 and n.2 (5th Cir. 2009); *Thompson v. Upshur County*, 245 F.3d 447, 460 (5th Cir. 2001). Conclusory allegations are insufficient to overcome the qualified immunity defense. *Williams-Boldware v. Denton County, Texas*, 741 F.3d 635, 643-44 (5th Cir. 2014).

The Magistrate Judge correctly determined that Plaintiffs failed to meet their burden of overcoming the Defendants' entitlement to qualified immunity. They have not shown a constitutional violation nor demonstrated that all reasonable prison officials would understood that the actions of the Defendants violated the Constitution. This objection is without merit.

The Plaintiffs further argue that Jock, January, Kelly, and Bowman deprived them of rights under the First Amendment such as maintaining authorized newspaper articles and communicating by mail regarding the conduct of officers. They assert that the Defendants "acted under color of state law to that [sic] implement or execute a policy statement, ordinance, regulation, or decision officially

adopted and promulgated by that body's officers or the result of the entity's custom, which was the moving force behind the alleged deprivation of rights. Plaintiffs hold a protected right in [sic], by statute, constitution, policy, or regulation, and which subjected or caused to be subjected Plaintiff to a violation from a duty of care out of tort law." This claim, that Plaintiffs were punished for exercising First Amendment rights, is essentially a claim of retaliation, and as such is barred by the statute of limitations.

### H. Amendment

The Plaintiffs cite *Texas Department of Corrections v. Herring*, 513 S.W.2d 6, 10 (Tex. 1974), a case from the Texas Supreme Court, as holding that a case may be dismissed for failure to state a cause of action only after a party has been given an opportunity to amend after special exceptions have been sustained. Special exceptions are a state court practice, provided for in Tex. R. Civ. P. 91, and not used in federal court; thus, the holding in *Herring* is not applicable.

The U.S. Supreme Court has explained that under Fed. R. Civ. P. 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon. These procedures alert him to the legal theory underlying the defendants' challenge, and enable him meaningfully to respond by opposing the motion to dismiss on legal grounds or by clarifying his factual allegations so as to conform with the requirements of a valid cause of action. This adversarial process also crystallizes the pertinent issues and facilitates appellate review of a trial court dismissal by creating a more complete record of a case. *Neitzke v. Williams*, 490 U.S. 319, 329-30, 109 S.Ct. 1927, 104 L.Ed.2d 338 (1989).

The Defendants' motions to dismiss were filed on May 4 and July 14, 2016. The Plaintiffs had more than ample time in which to file an amended complaint, and had the opportunity to and did meaningfully oppose the motions to dismiss by filing lengthy and detailed responses, clarifying their allegations and setting out additional factual details as well as additional incidents, just as they would have done in an amended complaint. The Magistrate Judge discussed these additional factual

details and incidents and determined that these did not state a claim upon which relief may be granted. The Plaintiffs' objection regarding amendment of their complaint is without merit.

## V. Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined that the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

**ORDERED** that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 32) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the Defendants' motions to dismiss (docket no.'s 7 and 25) are **GRANTED** and the above-styled civil action is **DISMISSED WITH PREJUDICE.** It is further

**ORDERED** that any and all motions which may be pending in this action are hereby **DENIED**.

So **ORDERED** and **SIGNED** this **1** day of **November, 2016.**

_____
Ron Clark, United States District Judge